JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
BRITTNEY CAMPBELL, NORTH CAROLINA STATE BAR NO. 31433
ASSISTANT UNITED STATES ATTORNEY
SEAN M. MAZOROL, OREGON STATE BAR NO. 116398
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

U.S. COURTS

NOV 14 2023

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>OLAMIDE OLADOSU SHANU,<br><br>Defendant. | Case No. CR 23-0296-S BLW<br><br>**INDICTMENT**<br><br>18 U.S.C. § 2<br>18 U.S.C. § 371<br>18 U.S.C. § 875(d)<br>18 U.S.C. § 981(a)(1)(A)<br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982(a)<br>18 U.S.C. § 1028A<br>18 U.S.C. § 1343<br>18 U.S.C. § 1349<br>18 U.S.C. § 1951(a)<br>18 U.S.C. § 1956(h)<br>18 U.S.C. § 2261A(2)<br>28 U.S.C. § 2461(c) |

The Grand Jury charges:

At all times relevant to this Indictment:

**INDICTMENT** - 1

## GENERAL ALLEGTIONS

1.  OLAMIDE OLADOSU SHANU was a resident and national of Nigeria.

2.  Unindicted coconspirator 1 (CC-1) was a resident and national of Nigeria.

3.  Unindicted coconspirator 2 (CC-2) was a resident and national of Nigeria.

4.  Unindicted coconspirator 3 (CC-3) was a resident of Michigan.

5.  Unindicted coconspirator 4 (CC-4) was a resident of Oregon.

6.  Victim-1 was a resident of Idaho and a student at a university in Idaho.

7.  A "money mule," as used in this Indictment, was a person who transfers illegally acquired money on behalf of, and at the direction of, other individuals.

8.  An "account takeover" as used in this Indictment, refers to theft and obtaining control of another person's legitimate pre-existing online account through fraudulent, deceptive, or otherwise illegal means.

### Overview of the Extortion and Fraud Schemes

9.  From in or around November 2020 through in or around May 2023, the defendant, SHANU and other coconspirators, known and unknown to the Grand Jury, were engaged in a conspiracy to commit sextortion, romance scams, and other types of cyber-enabled fraud schemes targeting individuals across the United States.

10.  The schemes were typically organized, with coconspirators generally having specific roles in the conspiracy. The coconspirators included "chatters," such as CC-1 and CC-2, who used fake social media accounts —or stolen social media accounts acquired via what is known as "account takeover" —to target and seek out victims. In addition to establishing the online "relationships" with the victims, the "chatters" provided the victims with the payment demands and instructions about how and where to make the payments. Other coconspirators

involved in the schemes managed the "chatters," while other coconspirators, including SHANU, primarily, but not exclusively, managed the funds obtained from the victims. United States citizens, both unwitting and complicit and who were often victims themselves, including CC-3 and CC-4, were used as money mules to transfer funds through layered transactions to the coconspirators.

11.     The "sextortion" schemes were typically executed in a similar manner. The coconspirators, posing as females, contacted victims, typically males, through social media using fake accounts and taken-over accounts and persuaded the victims to send sexual images and/or videos of themselves. Once the victims provided the explicit images and/or videos, the coconspirators threatened to disseminate the images to the victims' friends and family members and/or to post them widely online unless the victim made payments to the coconspirators through various peer-to-peer payment applications ("P2P Apps"), cryptocurrency transfers, and/or through the purchase of gift cards. The coconspirators falsely assured the victims that if they paid the demanded funds, the coconspirators would delete and/or refrain from distributing the victims' images.

12.     The "romance scams" also followed a similar pattern. The coconspirators, using fake identities on social media platforms, made contact with the victims and established deceptive emotional relationships. The coconspirators gained the victims' trust, persuaded the victims first that they had a romantic future together and later that the coconspirators had urgent needs for money, and then convinced the victims to send them money through P2P Apps, gift cards, and/or cryptocurrency.

13.     SHANU and his coconspirators frequently used victims-turned-money mules to receive and transmit the payments from the victims. Victims were instructed to make payments

to the money mules using various P2P Apps such as Venmo, Zelle, and CashApp. Frequently, as directed by the coconspirators, the money mules then used the funds they received from the victims to purchase and send cryptocurrency to wallet addresses provided by the coconspirators. Other times, victims and money mules were instructed to purchase gift cards and transfer them to the coconspirators.

14.     SHANU and his coconspirators targeted numerous victims across the United States, the exact number unknown to the Grand Jury, and from 2020 through 2023, Defendant obtained at least $2 million in payments to a cryptocurrency address controlled by Defendant, which was transferred offshore, including to multiple bank accounts in Nigeria.

*Victim-1*

15.     Coconspirators first made contact with Victim 1 (V-1), a student attending college in Idaho, in May 2023, when an unknown "woman," a coconspirator, began following V-1's account on the social media platform Instagram. Shortly after, V-1 and the unknown "woman" began messaging on the social media platform Snapchat using the platform's text chat function. The unknown coconspirator used the Snapchat account "[female first name and last name with initials C.W.]" ("Snapchat User 1") to communicate with V-1 and appeared to be a white female approximately 20-30 years of age. Snapchat User 1 sent V-1 what purported to be an explicit photo of "herself" and persuaded V-1 to send an explicit photo of himself. When V-1 sent his explicit photo, he was notified via the app that Snapchat User 1 had taken a screen capture of his image that otherwise would have disappeared after a few moments.

16.     Shortly after V-1 sent his explicit image, on or about May 2, 2023, Snapchat User 1 sent V-1 a message using the Snapchat chat function and informed him, in substance, that if V-1 did not follow Snapchat User 1's instructions, V-1's explicit photo would be sent to everyone

V-1 knew, all of his friends, and his life would be ruined. Along with this threat, Snapchat User 1 included a screenshot of what appeared to be a draft message in which an unknown person was poised to send V-1's explicit photo to his friends on Instagram.

17. Snapchat User 1 demanded a payment of $300 and provided V-1 with instructions to send the payment to a Venmo account that belonged to CC-3. Snapchat User 1 also told V-1 that if he made the payment, then that would be the end of the extortion. After V-1 made the initial $300 payment, Snapchat User 1 immediately made multiple additional demands for payment. V-1 made an additional two payments which, along with his initial payment, totaled $1,000. After making his third payment, the coconspirators demanded additional money. V-1 informed them that he would not make any additional payments.

18. After V-1 refused to make an additional payment, an unknown coconspirator contacted V-1 using the Snapchat voice call function. The caller, who was male and spoke with a strong accent, threatened V-1, and informed him that if he did not find a way to send additional money then the caller would send V-1's explicit photo to all of V-1's friends. Despite the threat, V-1 did not make additional payments, reported the fraud to Venmo, and blocked Snapchat User 1's account.

19. V-1 was then contacted on Snapchat by a Snapchat account called ["C.S.96"] ("Snapchat User 2"). Believing Snapchat User 2 to be the same individual as Snapchat User 1, V-1 accepted Snapchat User 2's friend request. Snapchat User 2 called V-1 using the Snapchat voice call function. V-1 believed the voice was the same caller that had previously contacted him and demanded payment. Snapchat User 2 questioned V-1 about reporting the fraud to Venmo and again threatened to send V-1's explicit photo to his friends unless he made additional

payments. V-1 refused to make any additional payments and, after blocking Snapchat User 2, had no further contact with the coconspirators.

*Coconspirators 1 through 4*

20.     Snapchat User 1 and Snapchat User 2 were both Snapchat accounts the coconspirators fraudulently obtained from legitimate owners through account takeovers.

    a.  The "C.W." account, used in the scheme by Snapchat User 1, was originally owned by a female minor. The account was fraudulently taken over in February 2023, at which point the phone number was changed to a Nigerian based telephone number and the display name was changed to "C.W."

    b.  The "C.S. 96" account, used by Snapchat User 2, was also owned by a female minor. The account was taken over in or around April 2023. In executing the account takeover, the coconspirators persuaded the original owner to change the recovery email address to an address the coconspirators controlled. The coconspirators immediately changed the password and took control of the account.

21.     CC-3, the owner of the Venmo account that V-1 was instructed to pay, was also a victim of the same sextortion scheme. Like V-1, CC-3 had been contacted by a coconspirator posing as a young woman using names similar to the Snapchat User 1 and User 2 accounts. The coconspirator persuaded CC-3 to send explicit images of himself. The coconspirator then threatened to send CC-3's explicit image to friends and families unless he paid $10,000. CC-3 agreed to pay $300 every week until he had paid the full amount. During this time period, CC-3 was also coerced to serve as a money mule by receiving payments from other victims through his Venmo account. The coconspirators directed CC-3 to purchase cryptocurrency using the funds he received from the other victims, including the funds he received from V-1, and then send the

cryptocurrency to two wallet addresses the coconspirators controlled, including an address owned by SHANU.

22.     CC-4 was initially a victim of the romance fraud scheme. She believed she was in a romantic relationship with an individual calling himself "Scott Bowman" ("Bowman"). In addition to sending thousands of dollars of her own money to Bowman or to others at Bowman's behest, the coconspirators used CC-4 as a money mule, transmitting thousands of dollars from victims to the coconspirators. Since 2020, CC-4 has sent a substantial amount of money to SHANU's 1HYab cryptocurrency wallet address, among others. She was also instructed to purchase gift cards and conduct other financial transactions on behalf of the conspiracy.

## COUNT ONE

### Conspiracy to Commit Wire Fraud
### 18 U.S.C. §1349

23.     The allegations set forth in paragraphs 1 through 22 are hereby realleged as if set forth herein.

24.     From in or around November 2020 and continuing to in or around May 2023, the exact dates being unknown to the Grand Jury, in the District of Idaho and elsewhere, the defendant, OLAMIDE OLADOSU SHANU, together with others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other to devise and intend to devise schemes and artifices to defraud, as to material matters, including sextortion, romance scams, and other cyber-enabled fraud schemes, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and, in so doing, caused interstate and foreign wire communications to be made, in furtherance of the schemes and artifices to defraud, in violation of 18 U.S.C. § 1343.

*Object of the Conspiracy*

25.     It was a purpose of the conspiracy for the defendant, SHANU, and his

coconspirators to unlawfully enrich themselves by participating in a variety of cyber-enabled

fraud schemes, including sextortion and romance scams, that targeted individuals throughout the

United States.

*Manner and Means*

26.     To further the objects of the conspiracy, Defendant and his coconspirators, known

and unknown, used the following manner and means, among others:

27.     Defendant and his coconspirators engaged in account takeovers and creation of

fake social media accounts.

28.     Defendant and his coconspirators utilized interstate and foreign wires to (1)

contact victims through various social media platforms including Snapshat and Instagram; (2)

communicate with victims using WhatsApp; (3) obtain payments from victims using various P2P

payment apps such as Venmo and CashApp; and (4) cause victims and money mules to purchase

and transfer cryptocurrency to various addresses in hosted and un-hosted cryptocurrency wallets.

29.     Defendant and his coconspirators contacted victims of the sextortion schemes

using the fake and stolen social media accounts posing primarily as young females.

30.     Defendant and his coconspirators convinced victims to send them explicit images

and videos.

31.     Defendant and his coconspirators threatened to send the explicit images and

videos to friends and family of the victims unless the victims made payment to Defendant and

his coconspirators. The coconspirators used and shared a common written "script" of how to make threats and extort money from victims, including, but not limited, to the following:

> Hey I have ur nudes and everything needed to ruin your life, i have screenshot all ur followers and tags and those that comment on ur post. I can send this nudes to everyone in your city till it go virals or send this all females on your list and your family if u don't cooperate....all u have to do is to cooperate with me and i will not expose u, if u block me i will ruin your life

> FOR THE FACEBOOK POSTING

> Hello famz this is [name of victim] naked pictures and dick he's [(victim user name)] on Instagram...he tried to hurt me so I'm spreading his nudes rn to make him feel ashamed all i want you guys to share this pictures all over the world till it goes viral and get to all his friends and family that's all.

> []

> I've been doing this for years now
> Over 10 years...I've done this to lot of cops and top people in the state and as soon as they do what I want I let them go cuz I always do as I've promised

> And when they try to prove stubborn with me...I expose them like I do promise and when that happens it ruin their career, their relationship, their family get shattered and they lose other opportunities too

32. Defendant and his coconspirators made materially false and fraudulent pretenses, representations, and promises to the sextortion victims to obtain money and property from the victim, including falsely telling the victims that if they paid the specific amount initially demanded, then the sextortion would end.

33. Defendant and his coconspirators adopted fake online identities and communicated with victims of the romance scams to gain the affection and trust of individuals.

34. Defendant and his coconspirators initiated contact with the victims of the romance scams by sending victims emails, text messages, and messages through online dating and social

media websites that deceived the victims into believing they were in relationships with a person who was, in fact, a fake identity assumed by the coconspirators.

35. Defendant and his coconspirators convinced the romance scam victims, under false representations, promises, and/or pretenses, to transfer money and payments to the coconspirators.

36. Defendant and his coconspirators made materially false and fraudulent pretenses, representations, and promises, of a romantic and close relationship to obtain money and property from the romance scam victims.

37. Defendant and his coconspirators caused the victims of the sextortion and romance scams to transmit money and property by means of wire communication in interstate and foreign commerce to Defendant and his coconspirators.

38. Defendant and his coconspirators caused the victims of the sextortion and romance scams to send payments to cryptocurrency addresses controlled by Defendant and his coconspirators.

39. Defendant and his coconspirators coerced and manipulated victims of sextortion and romance scams to act as money mules for the sextortion, romance scams, and other cyber-enabled fraud.

40. Defendant and his coconspirators used the money mules to receive the payments from the fraud victims, typically via P2P payment apps, and then launder the fraud proceeds by converting those proceeds to cryptocurrency and sending to addresses provided and controlled by Defendant and his coconspirators, known and unknown.

41. Defendant and his conspirators also instructed the money mules to purchase gift cards and provide the cards and/or card information to the coconspirators.

42. Defendant and his coconspirators frequently sold the cryptocurrency through one or more cryptocurrency exchanges and deposited the funds into multiple bank accounts primarily located in Nigeria.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO

### Aggravated Identity Theft
### 18 U.S.C. § 1028A

43. The allegations set forth in paragraphs 1 through 22 and 28 through 41 are hereby realleged as if set forth herein.

44. Beginning in or around February 2023 through in or around April 2023, in the District of Idaho and elsewhere, the defendant, OLAMIDE OLADOSU SHANU, and his coconspirators, known and unknown to the Grand Jury, without lawful authority, did knowingly possess, transfer, and use, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1343 and 1349 as alleged in Count One, which is incorporated herein by reference, knowing that the means of identification belonged to another actual person, and aided and abetted each other in the same, in violation of 18 U.S.C.§§ 1028A and 2.

## COUNT THREE

### Conspiracy to Commit Interstate Communications with Intent to Extort and Cyberstalking
### 18 U.S.C. § 371

45. The allegations set forth in paragraphs 1 through 22 and 28 through 41 are hereby realleged as if set forth herein.

46. From in or around November 2020 and continuing to in or around May 2023, the exact dates being unknown to the Grand Jury, in the District of Idaho and elsewhere, the

defendant, OLAMIDE OLADOSU SHANU, did combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit offenses against the United States.

*Objects of the Conspiracy*

47.     It was an object of the conspiracy, with intent to extort from victims, money and other things of value, to transmit in interstate and foreign commerce communications containing threats to injure the property and reputation of victims; to wit, to commit sextortion against victims, in violation of 18 U.S.C. §§875(d).

48.     It was an object of the conspiracy, with the intent to harass and intimidate victims, to use interactive computer services, electronic communication services, and electronic communication systems of interstate commerce, and any other facility of interstate and foreign commerce, to engage in a course of conduct that causes, attempts to cause, and would be reasonably expected to cause substantial emotional distress to victims; to wit, to commit sextortion against victims, in violation of 18 U.S.C. § 2261A(2)(B).

*Manner and Means*

49.     To further the objects of the conspiracy, Defendant and his coconspirators, known and unknown, carried out the manner and means described in paragraphs 28 through 41 of this Indictment.

*Overt Acts*

50.     To accomplish the objects of the conspiracy, the defendant, and his coconspirators committed and caused to be committed the acts identified in Paragraphs 1 through 22 and 28 through 41 of this Indictment as well as the following overt acts, among others, in the District of Idaho and elsewhere:

51. On or about May 20, 2020, SHANU opened a Binance account with a deposit address beginning with 1HYab (the "1HYab" address).

52. On or about July 1, 2022, the coconspirators, using WhatsApp, instructed a victim of the sextortion scheme ("V-5") to make a payment as follows:

> Tomorrow you gonna pay me 1500$ if you can pay me 1000$ rn. And we end everything Deal!!!

53. On or about April 3, 2023, Defendant and his coconspirators threatened CC-3 by sending a screenshot of a draft post to Instagram that included CC-3's explicit photos, provided his home address and date of birth and stated the following:

> Hello Fams this is [(CC-3)] naked pictures and dick he's [(CC-3's Username)] on Instagram …wew he tried to hurt me so I'm spreading his nudes rn to make him feel ashamed all I want you guys to share this pictures all over the world till it toes viral and get to all his friends and family that's all.
>
> Home Address: [redacted]
> Date of birth: [redacted]
> Age: 20

54. On or about May 2, 2023, Defendant and his coconspirators communicated with V-1 using Snapchat and made multiple threatens to send V-1's explicit images to his friends and ruin his life unless V-1 made payments to a Venmo account controlled by CC-3.

55. On or about May 2, 2023, Defendant and his coconspirators caused V-1 to make three payments totaling $1,000 to the Venmo account controlled by CC-3.

56. After receiving payments from V-1, on or about May 5, 2023, CC-3 purchased and transferred cryptocurrency to the address controlled by SHANU.

57. On or about the following dates, Defendant and his coconspirators caused victims of the fraud schemes, including V-1, to send the following amounts, among others, to CC-3's Venmo account:

| Date | Victim | Approx. Amount |
|------|--------|----------------|
| 4-15-2023 | V-2 | $1500 |
| 4-24-2023 | V-3 | $250 |
| 5-02-2023 | V-1 | $1,000 |
| 5-02-2023 | V-4 | $495 |

58.     On or about the following dates, CC-3 purchased Bitcoin through his CashApp account and then sent the following Bitcoin payments through CashApp to two cryptocurrency wallet addresses controlled by the coconspirators, including SHANU's cryptocurrency wallet IHYab:

| Date | Approx. Amount of USD Sold | Approx. Amount of BTC Purchased | BTC Transferred (less fee) to External Wallet Addresses |
|---|---|---|---|
| 4-04-2023 | $ 48.88 | BTC 0.00173263 | 1HYab |
| 4-06-2023 | $392.99 | BTC 0.01403366 | 1HYab |
| 4-09-2023 | $294.74 | BTC 0.01053267 | bc1q |
| 4-14-2023 | $304.58 | BTC 0.00987582 | bc1q |
| 4-15-2023 | $1522.81 | BTC 0.04999801 | bc1q and 1HYab |
| 4-17-2023 | $177.37 | BTC 0.00593494 | 1HYab |
| 4-21-2023 | $ 491.24 | BTC 0.01746379 | 1HYab |
| 04-24-2023 | $240.70 | BTC 0.00867588 | 1HYab |
| 4-28-2023 | $294.74 | BTC 0.01008518 | 1HYab |
| 4-28-2023 | $24.44 | BTC 0.00083700 | 1HYab |
| 5-02-2023 | $1403.50 | BTC 0.05003235 | 1HYab |
| 5-02-2023 | $ 915.65 | BTC 0.03264763 | 1HYab |
| 5-05-2023 | $491.22 | BTC 0.01684573 | 1HYab |

All in violation of 18 U.S.C. § 371.

## COUNT FOUR

### Conspiracy to Commit Extortion
### 18 U.S.C. § 1951(a)

59.     The allegations set forth in paragraphs 1 through 22 and 50 through 57 are hereby realleged as if set forth herein.

60.     From in or around November 2020 and continuing to in or around May 2023, the exact dates being unknown to the Grand Jury, in the District of Idaho and elsewhere, the

defendant, OLAMIDE OLADOSU SHANU, did combine, conspire, confederate, and agree with others known and unknown to the Grand Jury to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, and attempt to do so, by means of extortion, as the terms "commerce" and "extortion" are defined in Title 18, U.S.C. §§ 1951(b)(2) and (b)(3), in that the defendant and his coconspirators did combine, conspire, confederate, and agree to engage in sextortion and thereby obtain property of victims, with the consent of the victims induced by wrongful use of fear of economic and reputational harm.

*Manner and Means*

61.     To further the objects of the conspiracy, Defendant and his coconspirators, known and unknown, carried out the manner and means described in paragraphs 28 through 41 of this Indictment.

All in violation of 18 U.S.C. § 1951(a).

## COUNT FIVE

### Conspiracy to Commit Money Laundering
### 18  U.S.C. § 1956(h)

62.     The allegations set for in paragraphs 1 through 22 and 50 through 57 are hereby realleged as if set forth herein.

63.     Beginning at least as early as in or around 2020, the exact date being unknown, and continuing through in or about May 2023, in the District of Idaho and elsewhere, the defendant, OLAMIDE OLADOSU SHANU, did combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit money laundering offenses, in violation of 18 U.S.C. § 1956 as follows:

      a.  to knowingly conduct, attempt to conduct, and aid and abet others to conduct, financial transactions that affected interstate and foreign commerce, which

involved the proceeds of specified unlawful activity, that is, sextortion proceeds from Extortion, in violation of 18 U.S.C. § 1951(a), Interstate Communications with Intent to Extort, in violation of 18 U.S.C. § 875(d),  proceeds from Wire Fraud, in violation of 18 U.S.C. § 1343, knowing that said transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, and aid and abet others to transport, transmit, and transfer, monetary instruments and funds involving the proceeds of specified unlawful activity, that is, sextortion proceeds from Extortion, in violation of 18 U.S.C. § 1951(a), Interstate Communications with Intent to Extort, in violation of 18 U.S.C. § 875(d), and Cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), and romance scam proceeds from Wire Fraud, in violation of 18 U.S.C. § 1343, from places in the United States to or through places outside the United States, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission or transfer was designed in whole or in part to conceal or disguise the nature and source of the proceeds of the unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(B)(i).

*Manner and Means*

64.     The allegations set forth in paragraphs 28 through 41 are realleged as if set forth herein.

All in violation of 18 U.S.C. § 1956(h).

## COUNT SIX

### Extortion
### 18 U.S.C. § 1951(a)

65.     The allegations set forth in paragraphs 1 through 11, 13 through 21, 50, and 53-56 are incorporated herein.

66.     In or about May 2023, in the District of Idaho and elsewhere, the Defendant, OLAMIDE OLADOSU SHANU, did obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce, as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in commerce by extortion, as that term is defined in 18 U.S.C. § 1951, and aided and abetted the same, to wit; committing sextortion against V-1 as described in paragraphs 1 through 11, 13 through 21, 50, and 53 through 56 above, in violation of 18 U.S.C. §§ 1951(a) and 2.

## COUNT SEVEN

### Interstate Communication with Intent to Commit Extortion
### 18 U.S.C. § 875(d)

67.     The allegations set forth in paragraphs 1 through 11, 13 through 21, 50, and 53 through 56 are incorporated herein.

68.     In or about May 2023, in the District of Idaho and elsewhere, the Defendant, OLAMIDE OLADOSU SHANU, with intent to extort from V-1 money and other things of value, knowingly transmitted in interstate and foreign commerce communications containing

threats to injure the property and reputation of V-1 through sextortion as described in 1 through 11, 13 through 21, 50, and 53 through 56 above, and aided and abetted the same, in violation of 18 U.S.C. §§ 875(d) and 2.

### COUNT EIGHT

**Cyberstalking**
**18 U.S.C. § 2261A(2)(B)**

69.     The allegations set forth in paragraphs 1 through 11, 13 through 21, 50, and 53 through 56 incorporated herein.

70.     In or around May 2023, in the District of Idaho and elsewhere, the defendant, OLAMIDE OLADOSU SHANU, with the intent to harass and intimidate V-1, used interactive computer services, electronic communication services, and electronic communication systems of interstate commerce, and other facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to caused, and would be reasonably expected to cause substantial emotional distress to V-1; to wit, to commit sextortion against V-1 as described in paragraphs 1 through 11, 13 through 21, 50, and 53 through 56 above, and aided and abetted the same, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2.

### CRIMINAL FORFEITURE ALLEGATION(S)
**Fraud and Extortion Forfeiture**
**18 U.S.C. § 981(a)(1)(C)/28 U.S.C. § 2461(c)/18 U.S.C. § 982(a)**

Upon conviction of the offenses alleged in Counts One and Four of this Indictment, the Defendant, OLAMIDE OLADOSU SHANU, shall forfeit to the United States any and all property, real and personal, tangible and intangible, consisting or derived from any proceeds the said Defendant obtained directly or indirectly as a result of the foregoing offenses. The property to be forfeited includes, but is not limited to, the following:

1.    <u>Unrecovered Cash Proceeds and/or Facilitating Property</u>. Defendant obtained and controlled unrecovered proceeds of the offense of conviction, or property derived from or traceable to such proceeds, and property Defendant used to facilitate the offense, but based upon actions of Defendant, the property was transferred, diminished, comingled, or is otherwise unavailable. Defendant obtained and controlled at least $2,000,000 in unrecovered forfeitable property.

2.    <u>Substitute Assets.</u> Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, "or any other property of Defendant" up to the value of Defendant's assets subject to forfeiture. The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

    a.    Cannot be located upon the exercise of due diligence;

    b.    Has been transferred or sold to, or deposited with, a third person;

    c.    Has been placed beyond the jurisdiction of the court;

    d.    Has been substantially diminished in value; or

    e.    Has been commingled with other property which cannot be subdivided without difficulty.

**Money Laundering Forfeiture**
**18 U.S.C. § 981(a)(1)(A), § 982(a)(1), and 28 U.S.C. § 2461(c).**

34.    The allegations contained in Count Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(A), § 982(a)(1), and 28 U.S.C. § 2461(c).

35.    The United States hereby gives notice to the defendant, OLAMIDE OLADOSU SHANU, that, upon his conviction of the money laundering offense in violation of 18 U.S.C. § 1956(h), as alleged in Count Five, OLAMIDE OLADOSU SHANU shall forfeit to the United

States of America, pursuant to 18 U.S.C. § 981(a)(1)(A), § 982(a)(1), and 28 U.S.C. § 2461(c), any property, real or personal, involved in such offenses, and any property traceable to such property.

36.　　If any of the property described above, as a result of any act or omission of the Defendant:

        a.　Cannot be located upon the exercise of due diligence;

        b.　Has been transferred or sold to, or deposited with, a third party;

        c.　Has been placed beyond the jurisdiction of the court;

        d.　Has been substantially diminished in value; or

        e.　Has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

Dated this 14th day of November 2023.

A TRUE BILL

*/s/ [signature on reverse]*

FOREPERSON

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

BRITTNEY CAMPBELL
SEAN M. MAZOROL
ASSISTANT UNITED STATES ATTORNEYS